IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTEO VELASCO PERALTA, <br> JOSE VELASCO PERALTA, and <br> CELIA VERONICA BARRIOS, <br> individually and on behalf of all persons <br> similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EL TIBURON, INC., d/b/a Las Islas <br> Marias Restaurant, and MARIO <br> NUNEZ, <br><br> Defendants. | No. 16 CV 09112 <br><br> Judge John J. Tharp, Jr. |

## ORDER

For the reasons set forth in the Statement below, defendants' motion to vacate the default judgment entered against them on January 12, 2017 [16] is denied. The case remains closed.

## STATEMENT

In this action under the Fair Labor Standards Act, the Court entered a default judgment on January 12, 2017 in the amount of approximately $143,877 against defendants El Tiburon, Inc., d/b/a Las Islas Marias Restaurant ("Las Islas")[1] and Mario Nunez. In March 2017, the defendants moved to vacate the judgment pursuant to Rule 60(b)(4), asserting that the Court lacked personal jurisdiction over them because they had not been served with the complaint when the judgment was entered. The defendants maintain that they learned of this lawsuit only when notified that an account had been frozen in response to a citation to discover assets that the plaintiffs had served in an effort to collect the judgment. The defendants supported their motion to vacate with affidavits and the Court conducted an evidentiary hearing to resolve the contested fact issue of whether the defendants had been served with the complaint.

### *Background*

The complaint in this matter was filed on September 21, 2016. According to the return of summons filed on the docket, a process server personally served defendant Mario Nunez at 15 S. Broadway, Aurora, Illinois (the location of Las Islas) on September 27, 2016. The Affidavit of Service indicates that service was first attempted at 1:27 p.m. that day, but the process server was

---

[1] The pleadings in the case (including the declarations in support of the default judgment) refer to Las Islas Marias Restaurant, but at the evidentiary hearing, the parties referred only to "El Tiburon." The Court uses "Las Islas" to refer to the restaurant.

told by an employee, Javier Garcia, that defendant Nunez was "not in at this time." According to the Affidavit of Service, however, Garcia accepted service of the complaint on the restaurant at that time. The Affidavit describes Garcia as a Hispanic male, age 25, 5'9", 170 lbs., with black hair and brown eyes. The process server returned later that afternoon and, according to the Affidavit of Service, successfully served Mario Nunez at 5:33 p.m. The Affidavit of Service describes Nunez as a Hispanic male, age 50, 5'10" tall, 190 lbs., with black hair and brown eyes.

Neither Las Islas nor Nunez responded to the complaint or appeared in the case. Consequently, on December 9, 2016, the plaintiffs filed a motion for default judgment. Nicole Sanders, a legal assistant employed by the plaintiffs' counsel, testified at the evidentiary hearing that she sent the Notice of Motion to defendant Mario Nunez at 501 S. Bartlett Rd., in Streamwood, Illinois. That is the address listed on the Illinois Secretary of State's records for Nunez, who is described on the corporate record as the President and agent of Las Islas, Inc. The Secretary of State's records list the restaurant's address as 15 S Broadway, in Aurora. Notice of the motion for default judgment motion was also sent to the restaurant, at the Aurora address. The mailing sent to defendant Nunez was returned to the plaintiffs' counsel by the post office as undeliverable; the mailing to the restaurant was not returned. At the initial hearing on the motion for default judgment, neither defendant appeared, and neither filed any objection or otherwise responded to the default motion. The Court, however, required the plaintiffs to supplement the motion with additional information pertaining to the minimum and overtime wages owed. Accordingly, Sanders also mailed notice of the required supplement to the default motion to the defendants at the same addresses, to the same effect: the mailing to Nunez was returned by the post office; neither defendant appeared at the next hearing, and no objection to the augmented motion for default judgment was lodged. The motion for default judgment was granted on January 12, 2017.

Thereafter, the plaintiffs served Citations to Discover Assets on JP Morgan Chase and Bank of America. Copies of the Citations were mailed to the defendants on February 22, 2017 (Plts' Ex. 3), but this time Sanders mailed the copies for defendant Nunez to the restaurant's address rather than to the Bartlett address she had used previously without success. And this time, the mailing was not returned as undeliverable. Still, neither defendant took any action in response to the citations. JPMorgan Chase Bank responded negatively to the citation, but Bank of America indicated that it held, and had frozen, approximately $2,668 in a checking account. The Bank of America response does not indicate whether this account was in one or both of the defendants' names, but indicates that the funds were frozen as of February 17, 2017, the day after the citations were issued. The plaintiffs then filed a motion for entry of a turnover order as to the Bank of America account, and noticed that motion for presentment on March 16, 2017. Copies of the turnover motion were mailed to the defendants, though for some reason Sanders reverted to mailing the copy for defendant Nunez to the Bartlett address from which prior mailings had been returned as undeliverable.

Claiming to have learned of the default judgment only after the Bank of America account was frozen (more on this below), the defendants retained counsel and filed a motion to vacate the default judgment asserting that the Court lacked personal jurisdiction over the defendants because they had not been served with the complaint. The motion to vacate was supported by an affidavit from defendant Nunez and one from his brother José. These affidavits asserted, in brief, that José Nunez was the President of Las Islas, that defendant Mario Nunez did not work at the

restaurant, that no one named Javier Garcia had ever worked at Las Islas, and that neither Mario Nunez nor Las Islas had been served with the complaint in this case.

Consistent with their affidavits, Mario and José testified at the evidentiary hearing that José has always been the president of Las Islas. José explained that Mario's name was on the Secretary of State's records because the brothers had been partners for a short while in 2008 when the restaurant started (at another location) and they had put Mario's name on the State's records as President and Registered Agent because José had a prior DUI conviction that would have prevented the restaurant from obtaining a liquor license. Notwithstanding the Secretary of State's records, the brothers agreed that Mario had played no role in running the restaurant, had not been employed at the restaurant, and only visited the restaurant occasionally. Mario Nunez testified that he works as a truck driver and he doesn't complete his daily run until sometime between 5:00 and 6:00 p.m. He denied being served with the complaint at the restaurant (or anywhere else) and testified that he is 5'7", weighs 180 lbs., and was 39 years old on the day he was allegedly served.

José Nunez and Mariella Garcia, a manager at the restaurant, each testified that there is no employee at Las Islas named Javier Garcia. Both also denied that the restaurant had ever received any mailings regarding this case. José Nunez acknowledged that all mail delivered to the restaurant was put into his box in his office at the restaurant.

*Analysis*

The question here is straightforward: was either defendant served with the complaint? If so, each failed to timely respond to the complaint and has shown no cause to vacate the default judgments entered against them. If they were not properly served, however, the judgment must be vacated.

That said, the inquiry does not start at ground zero. Although it is the plaintiff's burden to prove service by a preponderance of the evidence, where a process server has completed an affidavit attesting to personal service of a complaint, there is a presumption that service was effected. "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Associates*, Inc., 998 F.2d 1394, 1398 (7th Cir. 1993) (internal quotations omitted); *see also Relational, LLC v. Hodges,* 627 F.3d 668, 673 (7th Cir. 2010) (upon prima facie showing, "the burden shifted to [defendant] to rebut, by strong and convincing evidence, the presumption of service"); *Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005) ("once such a prima facie showing is made, the burden shifts to the defendant to demonstrate that service was not received"). To say that an affidavit of service creates a presumption of service means that it constitutes proof of service of a quality that can only be overcome by strong and convincing evidence showing that its assertions about service are not accurate. As the defendants concede, they cannot adequately rebut the presumption merely by offering affidavits that conclusorily deny that service was effected.[2]

---

[2] It is important to distinguish between the evidentiary showing necessary to overcome the presumption of service created by signed returns of service and that needed to obtain an evidentiary hearing. A hearing is required if there are material fact disputes to be resolved in order to properly assess the quality of the defendant's rebuttal evidence (as well as any additional

*Tonge v. Arantee Grp., LLC,* 2015 WL 566784, *5 (S.D. Ind. Feb. 11, 2015); *Bilal v. Rotec Indus., Inc.,* 2004 WL 1794918, *3 (N.D. Ill. Aug. 5, 2004). Here, the defendants have offered more than bald denials, but in doing so they have cast substantial doubt on the veracity of their testimony, which accordingly falls short of the required "strong and convincing evidence" necessary to overcome the affidavits of service on which the plaintiffs rely.

To begin, the defendants have not effectively impugned the veracity of the affidavits of service. Mario Nunez argues that the description of "Mario Nunez" in the affidavit of service is so far off the mark as to show the affidavit's falsity, but the Court did not find the description to be so poor as to call its veracity into doubt. According to his own testimony, Mario was about 10 years younger, a couple of inches shorter, and 10 pounds lighter than the person described in the affidavit of service, but having viewed Mario in the courtroom, the Court cannot conclude that one could not in good faith have estimated Mario to be 50 years old, 5'10" in height, or 190 pounds, particularly after what was likely a brief encounter.

The defendants' other evidence and arguments offered to impeach the integrity of the affidavits of service are also unpersuasive. In the return of service the process server attested that he served both defendants at the restaurant on September 27, 2016; there is no dispute that the address reflected on the affidavits is correct. Notably, the process server did not claim to have served Mario Nunez at the Streamwood address that is listed as his address in the Secretary of State's records, a claim that would have been proven false by the subsequent mailings to that address that were returned as undeliverable. Nor did he claim to have served Mario at a time when Mario could prove he was not present. Mario testified that he worked for a trucking company in Chicago and generally did not complete his shift until about 5:00 p.m., but his estimates were imprecise (*e.g.,* return trip to Chicago took three or four hours; he arrived around 5:00 p.m.) and do not establish that he could not have been at the Las Islas at 5:33 p.m. (the time at which he was served, according to the affidavit of service) on any given day. Further, the defendants provide no reason the process server would have falsely claimed to have served Mario at 5:33 p.m. after truthfully having recorded that his attempt to serve Mario earlier in the day was unsuccessful. If inclined to fabricate service, one wonders why the process server didn't just claim to have served both defendants during his first visit at 1:27 p.m. It is also difficult to believe (and the defendants offer no reason why one ought to) that the process server simply invented a name—"José Garcia"—as the person who accepted service on behalf of the restaurant; if false, such a claim could be easily rebutted by means of payroll or other records listing the restaurant's employees.

The defendants, however, offered no such evidence. Instead, they elected to rely almost entirely on uncorroborated testimony. Instead of offering payroll records to rebut the affidavit's claim that José Garcia accepted service on behalf of the restaurant, they chose to rely solely on testimony from José and Maria Garcia that no one by the name of José Garcia had ever worked at Las Islas. So, too, the defendants might have undermined the claim that Mario was served personally at the restaurant by offering some evidence from his employer that showed that he

---

evidence offered by the plaintiff to prove service). *Durukan America,* 787 F.3d at 1164. In determining whether such a hearing is needed, no weighing of evidence is needed—or permissible. *Id.* Accordingly, this Court held the evidentiary hearing of May 3, 2017.

was working a schedule that would not have permitted him to be present at Las Islas at 5:33 p.m. on a Tuesday afternoon. *See, e.g.*, *Durukan America,* 787 F.3d at 1164 (defendant provided corroborative evidence of his claim that he was not present at time and location of alleged service). Again, they did not do so. By failing to offer evidence that could have corroborated these dispositive points, and which should have been readily available to them, the defendants cast doubt on their claims about lack of service.

There is, moreover, substantial reason to question the brothers' credibility, even apart from the lack of corroborating evidence.[3] Most significant, in the court's view, is the fact that the brothers acknowledged during the hearing that they had been deceiving the state of Illinois about Mario's role in the restaurant so that the restaurant could maintain a liquor license. Mario testified that he was only in the restaurant once every few months "to watch the fights,"[4] but is listed on the Secretary of State's records as the President and Authorized Agent of Las Islas. When questioned on cross-examination about why he is listed as the President and Agent for the company when he actually has no role in the restaurant, Mario admitted that he obtained the liquor license because José was not able to get one, though he claimed not to know why José could not qualify for the license. José, during his testimony, acknowledged that he was unable to obtain a license in his own name because of a prior DUI (and Mario's claim of ignorance is all the more incredible where José had no trouble coming clean about this fact). José tried to characterize the arrangement as an artifact of Mario's very early involvement in Las Islas, but Mario stated plainly that he had never been the President of the company and had not been a partner in the endeavor. That the brothers have, since 2008, been willing to deceive the State about the ownership and management of the restaurant raises substantial questions about their credibility generally and of their otherwise unsupported testimony that they never received service in this case.

Other claims by the Nunez brothers further undermine their credibility. José Nunez, for example, testified at the hearing that not only had he not been served with the complaint in this case, but that he had never received a single document mailed to the restaurant's address concerning the case—not the complaint; not the motion for default judgment; not the supplement

---

[3] In the absence of corroborative records, the testimony of Maria Garcia provided little independent support for José Nunez's claim that Las Islas had no employees by the name of José Garcia. Ms. Garcia did not understand English well (no interpreter was provided by the defendants, which they acknowledged was their responsibility, and they proffered her testimony nonetheless); she occasionally offered *non sequiturs* as her answers. Furthermore, she worked for José Nunez for years as the manager of Las Islas and remains employed there; these factors are indicative of potential bias in favor of Nunez and her continued employment.

[4] This Court takes notice that Mario Nunez and Las Islas have also been named as defendants in several law suits alleging piracy of cable transmissions of prize fights. The first, *J&J Sports Productions, Inc. v. Mario Nunez et al.,* No. 13-CV-8398, resulted in entry of a default judgment against both defendants; unlike in this case, however, there were no efforts to collect on the first default judgment entered against the defendants (at least so far as the docket reflects). A second case, *J&J Sports Production, Inc. v. Mario Nunez et al.,* No. 17-CV-02026, is currently pending; neither defendant has yet appeared in that case. In this case, Mario Nunez testified that he has never been served with a complaint any other lawsuit (including this one).

to the default motion; not the citations to discover assets; and not the turnover orders. While it might be plausible to believe that one, or even two, of these documents were mis-delivered, it strains credulity to assert that not one document mailed to the restaurant at the correct address was successfully delivered. And when the proponent of that claim is one who has been defrauding the state government for the past seven years, to say that it falls short of "strong and convincing" evidence is a gross understatement.

The brothers' accounts of how they learned of this lawsuit provide still more reasons to question their veracity. In his affidavit in support of the motion to vacate the judgment, Mario stated that he "first learned of this action when *my account* was frozen based on a citation to discover assets." Def. Ex. 2 at ¶ 8 (emphasis added). That statement, of course, cannot be accurate given his claim to have had nothing to do with the restaurant, and at the hearing, Mario contradicted his own affidavit, stating inconsistently, that he learned of the law suit "when my brother called me that someone froze *his* account." For his part, José testified that he had learned of the lawsuit when he went to the bank in early March to get a cashier's check for a seafood supplier and was told that the account had been frozen. According to José, he performed this task "every Tuesday."[5] The defendants offered no other evidence of this practice generally or of this particular bank visit, however. Moreover, and as noted above, Bank of America froze the account in question on February 17, 2017, a Friday. If, as José swore, he went to the bank every Tuesday, he would have learned that the account was frozen on Tuesday, February 21, not three weeks later "on or about March 8," as the defendants' motion to vacate represents. Standing alone, this discrepancy may be minor, but the defendants have provided no reason to overlook it, much less view it as an innocent error rather than as an effort to enhance the alleged alacrity with which the defendants acted upon learning of the efforts to collect the judgment.

In light of the substantial reasons to question the credibility of the Nunez brothers, the dearth of corroborative evidence they have provided, and the implausibility of the defendants' arguments, the Court concludes that the defendants have failed to meet their burden of presenting "strong and convincing" evidence to rebut the affidavits of service relied upon by the plaintiffs. While the question is not free from all doubt, the court concludes that it is more likely than not that the defendants were served on September 27, 2017, as set forth in the affidavits of service. In addition, the Court finds that at least Las Islas received some other documents alerting the defendants to the pendency of the lawsuit, but the defendants were content to ignore the suit until the plaintiffs took steps to collect on the judgment they obtained. Accordingly, the motion to vacate the judgment is denied.

*[signature: John J. Tharp Jr.]*

Date: May 16, 2017

John J. Tharp, Jr.
United States District Judge

---

[5] José testified that he did not work at the restaurant on Tuesdays—and the affidavit of service reports that Las Islas was served on a Tuesday. Although presumably it would be a simple matter to produce some sort of documentary evidence to support the claim that he did not work at the restaurant on Tuesdays, the defendants presented no such evidence.